## Chipps et al. v. Miller et al.

*George F. Whitmer, Rudolph Whitmer* and *Charles A. Jones*, for plaintiffs.
*M. A. Carringer*, for defendants.

ARIRD, P. J., August 16, 1934.—On February 24, 1934, the plaintiffs presented a bill in equity and it was ordered and decreed by the court that a preliminary injunction issue, returnable March 3, 1934.

Among other things, the bill filed in this case set forth:

1. That Adolf Muller and others were duly appointed and acting as a Board of Game Commissioners for the Commonwealth of Pennsylvania. W. F. Car-

penter, game warden of Forest County, and eight other residents of Forest County were also made defendants.

2. That there are in the said county of Forest a large number of fur-bearing animals, inter alia, beaver.

3. That the Board of Game Commissioners in 1933 declared an open season for trapping and killing beaver, and for that purpose promulgated certain regulations, a copy of which was annexed to the bill and made a part thereof.

4. That the said order and regulations are in violation of sections 601 and 605 of The Game Law of May 24, 1923, P. L. 359, its supplements and amendments.

In part, the prayer of the petitioner is as follows:

1. That the order of the Board of Game Commissioners promulgated as aforesaid be declared void, unlawful, and of no effect.

2. That the regulations accompanying the same be declared void, unlawful, and of no effect.

3. That the Board of Game Commissioners aforesaid be restrained from further promulgation of or putting into effect the order and regulations accompanying the same.

4. That W. F. Carpenter, game warden within the county aforesaid, be directed to enforce the laws of the Commonwealth insofar as the same relate to game and fur-bearing animals.

At the close of the prayer, the court was asked to grant such other and further relief as might be just, right, and proper.

On March 3, 1934, M. A. Carringer, Esq., entered his appearance for the defendants, and on the same day filed an answer admitting certain paragraphs and denying others, but neither at this time nor prior to March 3, 1934, did the defendants raise any question relating to the jurisdiction of the court.

On March 23, 1934, the defendants, by paper filed, raised the question of jurisdiction, and on the same day testimony was taken on the part of the plaintiffs.

We appreciate the fact that in our opinion the court should not have granted a preliminary injunction, and again counsel should have raised the question of jurisdiction prior to the time that he filed an answer for the defendants.

Objections to jurisdiction are of two classes, between which there is a clear and well-marked distinction:

1. Those relating to the authority of the court over the subject matter; and

2. Those relating to its authority over parties.

Objections of the first class cannot be waived nor can jurisdiction be obtained by acquiescence. But in the second class the rule is different. If the defendant appears by attorney, he waives his exemption and appears voluntarily. The jurisdiction of the court over him is thereafter beyond question.

In Mintz v. Mintz, 83 Pa. Superior Ct. 85, Judge Henderson, in writing the opinion of our Superior Court, said: "It is never too late to attack a judgment for want of jurisdiction which appears on the face of the record".

And in Fowler v. Eddy, 110 Pa. 117, Chief Justice Mercur, in writing the opinion of our Supreme Court, said: "It is never too late to attack a judgment for want of jurisdiction."

Our courts have also decided that the question of jurisdiction can be raised even in the Supreme Court. We find the Act of May 26, 1931, P. L. 191, reads as follows:

"Section 1. Be it enacted, &c., That for the purposes of this act, the term 'State officer,' when used herein, shall mean the head of any administrative

department or the chief executive officer of any independent administrative board or commission of the Commonwealth.

"Section 2. All actions at law or in equity by which it shall be sought to compel a State officer to perform or to restrain him from performing any official act in the execution of the laws of the Commonwealth shall be instituted in the court of common pleas of Dauphin County, and, for such purpose, jurisdiction of all such actions is hereby conferred upon that court."

We have before us a book entitled "Pennsylvania Game Law 1933-1934". At page 41 we find article VI: "Fur-bearing Animals," a part or portion of which reads as follows: "There is no open season for beavers".

Section 605 of The Game Law reads as follows:

"Beavers and Their Dams Protected.—It is unlawful to kill or capture, or to attempt to kill or capture, any beaver within this Commonwealth, or to destroy or disturb or in any manner interfere with the dams or houses of such animals except upon special permit from the board. . . ."

Section 606 reads as follows: "Article not to Apply to Board.—Nothing contained in this article relating to the taking, killing, and possession of fur-bearing animals shall apply to the board, or any of its officers or agents, while acting for the Commonwealth.

"When it is proven to the satisfaction of the board that fur-bearing animals are excessively destroying property or otherwise becoming a nuisance in any section, the board may, at any time, remove or have removed such animals from that locality, or direct the killing and disposition of same in such manner as the case may require."

Another question raised in the argument of this case was that the legislature cannot delegate its authority or powers to others, such as game commissioners. The Game Law of May 24, 1923, P. L. 359, sec. 201, provides:

"Appointment of Board of Game Commissioners.—The Governor, with the advice and consent of the Senate, shall appoint six competent citizens of this State to be and act as a Board of Game Commissioners, no two of whom shall be from the same Senatorial district. The members of the board shall hold office for the term of six years, and shall receive no compensation for their services."

This act prescribes certain duties to be performed by the game commissioners. It was amended by our legislature in 1929, 1931, 1933, and 1934, but without changing section 201, under which it appears that the Board of Game Commissioners of the Commonwealth of Pennsylvania was duly appointed. It also appears that one of the regulations of the Board of Game Commissioners of the Commonwealth of Pennsylvania is the following:

"The open season for trapping beaver shall begin March 1, 1934, and end April 10, 1934, both days inclusive."

There appear to be fourteen sections to the regulations, but we do not think it necessary to quote other sections in this opinion.

Members of the Board of Game Commissioners, defendants in the above-entitled case, are State officers within the intent and meaning of the Act of May 26, 1931, P. L. 191, and the legislature by said act has conferred exclusive jurisdiction upon the Court of Common Pleas of Dauphin County in all actions at law or in equity by which it shall be sought to restrain such officers from performing any official act in the execution of the laws of the Commonwealth.

It appears on the face of the record that the Court of Common Pleas of Forest County has no jurisdiction over the case. We note that the entire Board of Game Commissioners are made defendants. The injunction, in effect, restrains the action of the entire commission, which must necessarily include its chief executive officer.

It would serve no good purpose to continue this discussion. We conclude that the court of Forest County has no jurisdiction and the preliminary injunction issued February 24, 1934, is therefore dissolved, and the plaintiffs are referred to the Court of Common Pleas of Dauphin County, which has sole jurisdiction of this matter. The plaintiff's bill is dismissed.

From Joseph H. Goldstein, Warren, Pa.