## Transeau v. City of Philadelphia

360

*Ralph B. Umsted*, for plaintiff.
*Abraham Wernick*, for defendant.

GORDON, JR., P. J., April 26, 1946.—This bill in equity is brought to restrain defendant, the City of Philadelphia, from collecting, or attempting to collect, the city wage tax for the years 1940 to 1945, both in- . clusive, upon the salary earned by plaintiff in the City of Harrisburg as an employe of the Department of Revenue of the Commonwealth. The bill avers that plaintiff is, and has been, a resident of Harrisburg, Dauphin County, Pa., since prior to January 1, 1940, the date on which the Wage Tax Ordinance of December 13, 1939, went into effect; that notwithstanding he has resided in Harrisburg since removing there to enter the employ of the Commonwealth as director of the Bureau of Highways and Safety of the Department of Revenue, he has regularly voted in the election division of his former residence in Philadelphia under the authority of certain constitutional and statutory laws; that he has earned no wages or salary in the City of Philadelphia since his aforesaid removal to Harrisburg in 1939; and that, although he is not subject to the Philadelphia Wage Tax Ordinance because he has neither resided, nor earned taxable money here, the city has threatened him with divers suits to enforce the said ordinance and to collect wage taxes alleged to be due the city thereunder from January 1940 to date. The bill then prays for an injunction to restrain defendant from collecting, or attempting to collect,

any wage tax upon his earnings during the period in question.

The city's answer, after denying that plaintiff is a resident of Harrisburg, and averring to the contrary that he is, and always has been, a resident of the City of Philadelphia and subject to liability for the city wage tax upon his State salary and any other money earned by him in Harrisburg or elsewhere, also prays for cross-relief against plaintiff in the nature of a judgment in its favor for the amount of the wage taxes, with interest and penalties thereon, as to which plaintiff is alleged to be in default because of his failure to return and pay the same, as required by the ordinance.

From the testimony presented we make the following findings of fact in the case:

### Findings of fact

1. For 34 years prior to 1939, plaintiff resided in the City of Philadelphia, his last address being 728 Dorsett Street in said city, and during 26 years of said period plaintiff was employed by the City of Philadelphia.

2. In September 1939 plaintiff took employment with the State Department of Revenue at Harrisburg as Director of the Bureau of Highways and Safety of the Commonwealth of Pennsylvania, the duties of said employment being required to be performed at Harrisburg, Pa.

3. For the purpose of performing his duties as such Director of the Bureau of Highways and Safety of the Commonwealth, plaintiff removed with his family in the fall of 1939 to 308 Chestnut Street, Harrisburg, where he has since continuously remained, his present address therein being 701 North 16th Street.

4. The removal of plaintiff to Harrisburg was for the purpose of performing his duties as a State employe as aforesaid.

5. In moving to the City of Harrisburg for the purposes aforesaid, plaintiff did not intend to abandon his residence in the City of Philadelphia and take up a new and permanent residence in the City of Harrisburg. His presence in Harrisburg was occasioned solely by his State employment, and he had no intention of remaining there for any time beyond that required for the performance of the duties thereof.

6. In the exercise of his right under the Constitution and laws of the Commonwealth as a resident and qualified elector of the City of Philadelphia absent therefrom while employed in the service of the State, plaintiff voted in the election division of his residence in the City of Philadelphia at the fall elections of 1939, and thereafter retained his registration therein and regularly voted at every election, except one, held in the City of Philadelphia from the time of his removal to Harrisburg as aforesaid to the present.

7. Plaintiff is, and has been continuously for upwards of 46 years, a citizen of Pennsylvania and resident of the City of Philadelphia.

8. From January 1940 until April 1942 plaintiff received as compensation, or salary, for the services rendered by him to the State of Pennsylvania the sum of $5,000 per annum, and since said April 1942 has been receiving $6,000 per annum.

9. Plaintiff did not file with the receiver of taxes of Philadelphia County any returns of the compensation or earnings received by him as aforesaid from January 1, 1940, and has not paid to the City of Philadelphia the wage tax lawfully due and payable thereon under said ordinance.

10. The amounts of the taxes imposed by the aforesaid city Income Tax Ordinance upon the salary earned by plaintiff as an employe of the Commonwealth for the years 1940 to 1945, together with the interest and

penalties lawfully chargeable thereon to date, are as follows:

| Year | Salary | Tax—1½ Percent (1 Percent 1943 on) | Interest and Penalties to Date | Total |
|------|--------|------|------|------|
| 1940 | $5,000 | $75.00 | $25.13 | $100.13 |
| 1941 | 5,000 | 75.00 | 20.63 | 95.63 |
| 1942 | 5,749.98 | 86.25 | 18.54 | 104.79 |
| 1943 | 6,000 | 60.00 | 9.30 | 69.30 |
| 1944 | 6,000 | 60.00 | 5.70 | 65.70 |
| 1945 | 6,000 | 60.00 | .60 | 60.60 |

Grand total . . . . . . . . . · . . . . . . . . . . . . . . . . . .$496.15

### Discussion

The case before us turns upon a single mixed question of law and fact, namely, what has been the legal residence of plaintiff since January 1, 1940? If it has been in Philadelphia, and not in Harrisburg as he claims, he is unquestionably liable for the taxes imposed upon the wages of residents of the city, wherever earned, by the Ordinance of December 13, 1939, and its amendments. There can be no doubt that, after being a citizen and resident of Philadelphia for more than a generation, plaintiff went with his family to Harrisburg in the fall of 1939, where he had secured a position under the State Government requiring his constant presence in that city, and that that consideration alone motivated his removal to the State capital. He has actually lived in Harrisburg since 1939 because of his State employment, and intends to remain there with his family as long as his services continue acceptable to the Commonwealth, which he naturally hopes will be permanent. This being the nature of his residential intentions, they suggest a more or less indefinite presence in Harrisburg, which, standing alone and in ordinary circumstances, would indicate

that city as his permanent, and hence legal, residence. On the other hand, a fair-minded appraisal of his testimony as a whole will support no conclusion other than that the permanency of his stay in Harrisburg is conditioned upon his continued tenure of public office, and that he has never entertained any real intention to make Harrisburg his permanent home, or to live there after it ceases to be convenient to his place of public employment. Although he attempted in his testimony in chief to convey the impression that when he left Philadelphia he intended to abandon it, and to adopt Harrisburg as his permanent residence, on being pressed for an explicit declaration respecting his residential intentions, he disclosed complete uncertainty respecting them, and repeatedly admitted that his going to, and the duration of his stay in, Harrisburg were wholly dependent upon his continued tenure of the State post. This alone forces the conclusion that he has always had and still retains the animus revertendi to his original residence in Philadelphia without the abandonment of which his legal residence once established there remains unchanged.

The intention of plaintiff to retain Philadelphia as his legal residence, notwithstanding his physical removal to Harrisburg because of his State employment, is not only disclosed by his own testimony on the witness stand. It is also irrefutably established by the additional fact that he has always maintained his electoral registration in Philadelphia, and, with one exception in 1940, has returned at each election to his residence here to vote in the division in which he had regularly voted before going to Harrisburg. This fact in itself negatives his claim to being a resident of Harrisburg rather than of Philadelphia, and fully confirms the conclusion we have reached from his own testimony.

Article VIII, sec. 1, of our Constitution, which establishes the qualifications of an elector, prescribes that: "He shall have resided in the election district where he shall offer to vote at least two months immediately preceding the election." [1] The residence which is thus made an essential prerequisite to voting is not a technical one, of a special kind and for a limited purpose. It is an actual and genuine physical residence: the place where one's home is, and which, once acquired, persists in law until it is abandoned and a new residence taken up, with the intent to make the latter one's permanent domicile. It is the place to which the ultimate and fundamental allegiance of the citizen attaches, and from which he can demand as of right the full protection of organized government. The stranger in a community may receive many of the advantages of local governmental activities, but he can take no part in its management and operation. This is the exclusive right of the resident citizen; and he who claims and enjoys the privileges and benefits of resi-

---

[1] This entire section reads as follows:

"Section 1. Every male citizen twenty-one years of age, possessing the following qualifications, shall be entitled to vote at all elections, subject however to such laws requiring and regulating the registration of electors as the General Assembly may enact:*

"First. He shall have been a citizen of the United States at least one month.

"Second. He shall have resided in the State one year (or, having previously been a qualified elector or native born citizen of the State, he shall have removed therefrom and returned, then six months), immediately preceding the election.

"Third. He shall have resided in the election district where he shall offer to vote at least two months immediately preceding the election.

"Fourth. If twenty-two years of age and upwards, he shall have paid within two years a State or county tax, which shall have been assessed at least two months and paid at least one month before the election."

---

*"Amendment of 1901, P. L. 427."

dence will not be heard to disavow it, when confronted by the burdens and duties which that residence also entails.

Plaintiff claims, however, that he voted here under the authority of section 13 of art. VIII of the Constitution which provides that: "For the purpose of voting no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence, while employed in the service, either civil or military, of this State or of the United States," [2] and that this provision gave him the right to change his legal residence to Harrisburg and at the same time to vote in Philadelphia, which he no longer considered as in any sense his true residence. The fallacy in this contention lies in a misconception of both the language and purpose of this section of the Constitution. It obviously is intended to deal only with the situation of one who is compelled by his public service to *absent himself* from his true residence, which he neither intends nor wishes to change. Its purpose is clearly to protect such a person in the retention of the residence of his choice by forbidding, first, his physical absence being deemed proof of its loss, and second, his presence at the place of his employment being construed as the acquisition of a new residence there. The fact of such a physical removal from one place to another would ordinarily be held to work a legal change of residence and section 13 merely prevents that effect from being attributed to it in the circumstances enumerated in the constitutional provision. Section 13 does not pur-

---

[2] "Section 13. For the purpose of voting, no person shall be deemed to have gained a residence by reason of his presence, or lost it by reason of his absence while employed in the service, either civil or military, of this State, or of the United States, nor while engaged in the navigation of the waters of the State or of the United States, or on the high seas, nor while a student of any institution of learning, nor while kept in any poorhouse, or other asylum at public expense, nor while confined in public prison."

port, either by its language or in the light of its plain purpose, to abolish for a particular class of citizens the residence required by section 1 of the same article of the Constitution as a fundamental qualification of an elector, by permitting them to reside in one place and vote in another. It merely serves the dual purpose of (a) shielding the electorate of a community from being flooded by "outsiders", whose presence in it is not accompanied by a real local interest or domiciliary intent, and (b) protecting the residents of other communities from being penalized for entering the public service by the loss of citizenship in the localities of their own choice. Hence plaintiff's continuation of his registration and voting in Philadelphia, under the right to do so conferred upon him by the Constitution, not only evidentially corroborates the conclusion we reached from his own testimony that he always intended to retain a legal residence here, but it was also the one act he could have performed to definitely settle the question of his residence, since it irrevocably fixed and determined it at Philadelphia, notwithstanding any of his declarations or other conduct indicating the contrary. Had plaintiff actually intended to change his permanent residence to Harrisburg when he moved there, regardless of his State employment, which is the only kind of removal that would have worked a change of his legal residence, he could not have lawfully continued to vote in Philadelphia, and would have been entitled to vote only in Harrisburg. This being so, he is, and always has been, a resident of the former city, and is equally liable with all other citizens for any tax, such as the city wage tax, levied by it on the basis of residence therein.

No decision directly ruling the point here raised has been called to our attention. Such as there are deal with the reverse of the present situation, that is, where the taxing authority of the place of the taxpayer's

public employment attempts to levy a tax based on his residence there, and the taxpayer claims a residence elsewhere. Here the taxpayer is resisting taxation at the place of his former residence, on the ground that it is at the place of his employment. The reasoning of all the authorities, however, tends to support the conclusion that we have reached in the present case. That of one of the earlier cases, The Commissioners of Dauphin Co. v. Banks, 1 Pearson 40 (1954), which is the closest we have found to this one on its facts, is so clear, fundamental and comprehensive that quotation from it at length will, we think, amply support our present decision. In that case an effort was made by Dauphin County to tax the personal property of the Auditor General, who resided in Mifflin County, and, in holding that Dauphin County was not entitled to levy the tax, the court said:

"Ephraim Banks was auditor-general of the State of Pennsylvania, and resided in Lewistown, Mifflin county, Penna. The controversy in this case, although in form between the above-stated parties, is in substance between the counties of Dauphin and Mifflin, and the boroughs of Harrisburg and Lewistown, as to the other taxes imposed upon this office, except that coming to the State, which must be paid in any event. The case stated raises two questions. Must the tax on an office be imposed at the place where it is required by law to be exercised, or at the place where the officer resides? And, secondly, where is the residence of the defendant? It is very certain that the official duties of the auditor-general can be performed at no other place than at the seat of government. There he must keep his office; but in our opinion that alone will not designate the place of taxation. By our whole system of jurisprudence real estate is to be taxed at the place of its location; personal property, including all offices and posts of profit, professions, trades and occupations,

together with money at interest, at the residence of the owner or person to be taxed."

"We cannot believe that the laws contemplate the assessment of an individual in one township for his occupation, because it is there carried on; for his office in another, because it is there exercised; for his money at interest in a third, because it is there payable; and for his personal property in a fourth, because it is there situated; but on ascertaining his residence, that is the place of taxation. There might possibly be cases where the situs of personal property would fix the place of taxation; as where the owner resides at a distance or out of the State; but the exercise of an office, profession, trade, or occupation is so purely and entirely personal in its character, that a tax cannot be imposed on account of either, except where the party to be taxed resides. There might possibly be cases where a man performs the duties of an office at Harrisburg, pursues the occupation of an iron-master in Perry county, has large sums of money at interest in Northumberland, and resides in Cumberland county. In such a case the law does not contemplate an assessment for taxes on each object in the several counties, respectively, but that he shall be taxed for all at the place of residence. To the State treasurer it is a matter of indifference where the taxes are imposed, and if the counties lose in one instance, they are presumed to gain in another. We may further add, that in nearly every State in the Union it has been decided that a personal tax must be assessed in the place of residence, where the party to be taxed is domiciled at the time of the assessment. Residence, domicile and place of abode, when applied to taxation, right of suffrage, and some other cases, have been always held to be synonymous terms. It is well settled that for such purposes, and for the succession of personal property, a man can have but one residence or domicile at the same time.

Before taking upon himself the duties of the office proposed to be taxed, Mr. Banks resided at Lewistown, in his own house; he never removed his family, which continues to reside in the same place; he himself boarded at a hotel in this town, and visited them occasionally. He has never exercised nor offered to exercise the right of suffirage here. Domicile or residence is a question of fact depending on no single circumstance, but upon all taken in connection. We cannot doubt in the present case, from the circumstances declared in the case stated, that the continuance of the defendant here is temporary; that he always possessed the animus revertendi; did not intend to forsake his house or family, and consequently Lewistown continued to be his place of residence. It is very true that, in many cases, the domicile of the husband will draw to it that of the wife, when he notoriously removed from his former residence, and settled elsewhere. But when a man leaves his wife, family, and home, without any intention of separating from them, but evidences his design to return by all his acts, their continued residence would still be presumed to be his domicile. Had Mr. Banks exercised the right of suffrage here, it would have been a strong circumstance to show that this was his place of residence; in fact, he would probably have been estopped from denying it, as the Constitution requires a residence of ten days in the district immediately pending election at which he offers to vote, and a person has no right, under any circumstances, to vote in any district except where he is resident at the time, and has resided for ten days next preceding. But it is conceded that the defendant made no attempt or offer to exercise this privilege. From all the facts conceded, we are of opinion that Mr. Banks did not change his domicile, but the same continued, and still continues unaltered. That the State and county tax on account of this office are properly

assessed at his place of residence in Lewistown. Therefore, we give judgment in favor of the defendant in the case stated."

See also Nixon v. Nixon, 329 Pa. 256, 268, Gearing v. Gearing, 90 Pa. Superior Ct. 192, District of Columbia v. Murphy, 314 U. S. 441, Lesh v. Lesh, 13 Dist. R. 537, Com. v. Jones, 12 Pa. 365, and 129 A. L. R. 1392, 1401, 1402. The unique character of the instant case lies in the fact that plaintiff here is manifestly resorting to a mere assertion of an intention in order to evade the payment of taxes which, in both law and good morals, he should not be permitted to avoid; a contention which, if it were upheld, would only render tax evasion, in such circumstances, easy and profitable.

For the foregoing reasons we reach the following conclusions of law:

### Conclusions of law

1. Plaintiff is, and from the fall of 1939 to the present time has been, a resident of the City of Philadelphia.

2. Plaintiff is not entitled to the equitable relief which he seeks.

3. Plaintiff is liable to the City of Philadelphia for the taxes levied upon his compensation or earnings as a State employe by the ordinance of said city of December 13, 1939, from January 1, 1940, to date at the rate of 1½ percent on all compensation earned from January 1, 1940, to December 31, 1942, and at the rate of one percent from January 1, 1943, to date, together with the interest and penalties lawfully chargeable thereon.

4. Defendant, the City of Philadelphia, is entitled to judgment in its favor, and against plaintiff, for the amount of said taxes, together with interest and penalties as aforesaid, which said taxes, interest and penalties amount in all to $496.15.

Accordingly we now enter the following decree nisi in the case:

### Decree nisi

And now, to wit, April 26, 1946, this case having come on to be heard upon bill, answer and proofs, upon consideration thereof, it is ordered, adjudged and decreed:

1. That plaintiff is liable to defendant, the City of Philadelphia, for taxes levied by the City of Philadelphia under the Ordinance of December 13, 1939, upon his salary as an employe of the Commonwealth of Pennsylvania, from January 1, 1940, to date, which said taxes, together with interest and penalties thereon, amount in all to the sum of $496.15, which said sum plaintiff is ordered and directed to pay forthwith to said defendant, the City of Philadelphia.

2. Plaintiff shall pay the costs of these proceedings.

The prothonotary will enter this decree nisi, and give notice thereof to the parties or their counsel and, unless exceptions thereto are filed within 15 days, either party may present to the court a form of final decree to be entered in the case.